**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 7, 2022**

# In the Court of Appeals of Georgia

A21A1234. FLUELLEN v. DAVIS.

PINSON, Judge.

Danita Fluellen was injured when Mechelle Davis rear-ended a car that Fluellen was riding in. Fluellen eventually sued Davis to recover for her injuries, but she failed to perfect service until five months after the statute of limitation expired, even though her private investigator had verified Davis's address almost a year earlier. On this basis, the trial court dismissed her lawsuit. We affirm that dismissal because it was within the court's discretion to conclude that Fluellen failed to exercise the greatest possible diligence in perfecting service.

## Background

Fluellen was injured when Davis rear-ended the car in which Fluellen was riding as a passenger. On November 7, 2017, Davis pled nolo contendere to a charge of following too closely, which triggered Fluellen's two-year statute of limitation to bring a personal injury action. See OCGA § 9-3-33; see also OCGA § 9-3-99 (providing that the statute of limitation for the victim of a crime to bring a tort action is tolled "until the prosecution of such crime or act has become final or otherwise terminated"); *Williams v. Durden*, 347 Ga. App. 363, 364–65 (819 SE2d 524) (2018) ("the limitation period for a tort action arising from a traffic violation is tolled until the prosecution for the violation is no longer pending"). About 13 months later, in December 2018, Fluellen sued Davis, but she did not perfect service on Davis until more than 16 months after that (and five months after the limitation period expired).

The undisputed evidence about Fluellen's service attempts shows that, in January 2019, Fluellen initially attempted service at 1201 Barnes Mill Road in Marietta, which was the address Davis provided for the police report after the accident. A process server from Atlanta Legal Services was told by someone at 1201 Barnes Mill that Davis had moved out and left no forwarding address.

A few days later, Fluellen's attorneys searched for Davis on Accurint, a people-finding tool from Lexis Nexis. They found another address in Marietta, at 2400 Barrett Creek Boulevard, Apt. 907. During the next month, Atlanta Legal Services made three unsuccessful attempts to serve Davis at that address. Davis was not listed on the gate directory, and the leasing office told ALS she did not live there.

Fluellen then retained a private-investigation company, Gold Investigations, Inc., to find Davis. On May 28, 2019, Gold reported that they were "able to verify an exact location" for Davis, at 110 Brookside Court, in Dallas, GA.[1] Fluellen did not try to serve Davis at that address at that time. Notably, 110 Brookside was where Davis was eventually served.

Six days after informing Fluellen of the 110 Brookside address, Gold updated its report to clarify that while "[u]tilities [were] found under identifiers" at 110 Brookside Court, Davis "may have recently moved" to 2400 Barrett Creek Boulevard, Apt. 1227. By August 2019, ALS had made five unsuccessful attempts to serve Davis at 2400 Barrett Creek Boulevard, Apt. 1227.

---

[1] The initial report from Gold Investigations was dated May 1, 2019, but Fluellen's counsel averred that the report "was provided" on May 28, 2019, and the trial court cited the later date in its order. In the absence of contrary evidence, we presume the findings of the trial court are correct. *Cox v. Bank of Am., N.A.*, 321 Ga. App. 806, 807 (2) (742 SE2d 147) (2013).

Fluellen then asked Gold to run another search. In October 2019, Gold reported that "[a]fter a nationwide detailed investigative search, we were unable to verify an exact location" for Davis. After receiving that report, Fluellen's counsel continued trying regular searches on Accurint, but they did not turn up any new addresses. Fluellen's attorney averred that, as of April 10, 2020, he did not know Davis's current address.

On November 7, 2019, the statute of limitation expired for Fluellen's claim against Davis. On that day, Davis filed a special appearance, without submitting to jurisdiction or venue, to assert affirmative defenses based on laches, lack of service, and the statute of limitation. Davis followed up a few months later with a motion to dismiss on the same grounds.

While the motion to dismiss was pending, on April 10, 2020, a process server finally served Davis in person at the 110 Brookside Court address. The trial court then granted Davis's motion to dismiss. The trial court concluded that Fluellen had not exercised the required degree of diligence to serve Davis because she had made "zero service attempts" during the five months between the day the statute of limitations expired (and Davis filed her special appearance) and the day Davis was finally served. The court also rejected Fluellen's argument that her suit should be

4

allowed to proceed because Davis was not prejudiced by the lack of timely service. This appeal followed.

Discussion

The determination whether a plaintiff is guilty of laches for failing to exercise due diligence in perfecting service after the running of the statute of limitation "is a matter within the trial court's discretion and will not be disturbed on appeal absent abuse." *McGhee v. Jones*, 287 Ga. App. 345, 346 (652 SE2d 163) (2007) (cleaned up). Here, Fluellen argues that she met and exceeded the required degree of diligence "given the information available to her, including evidence showing that Ms. Davis could not be found and that her address was incorrect." We decline to disturb the trial court's contrary conclusion.

To commence a lawsuit, a plaintiff must both file her complaint and serve it on the defendant. See OCGA § 9-11-4; *Anglin v. State Farm Fire & Cas. Ins. Co.*, 348 Ga. App. 362, 364 (1) (823 SE2d 51) (2019). The complaint must be filed within the time set by statute of limitation, but, under certain circumstances, "the law allows the same to be served beyond that applicable period." *Van Omen v. Lopresti*, 357 Ga. App. 9, 10 (2) (849 SE2d 758) (2020) (citation and punctuation omitted). But when, as here, the statute of limitation has run and the defendant has raised a service defense

5

in court, the plaintiff must show that, after the limitation period expired, she exercised the "greatest possible diligence" to perfect service; only then will service "relate back" in time to the filing of the complaint and thus be timely. Id. at 10–11, 14 (2); see also *Swain v. Thompson*, 281 Ga. 30, 32 (2) (635 SE2d 779) (2006). In determining whether a plaintiff exercised the greatest possible diligence, "we focus on the plaintiff's actions, not the Defendant's." *Lipscomb v. Davis*, 335 Ga. App. 880, 881 (783 SE2d 398) (2016) (citation and punctuation omitted). And establishing the requisite diligence is the plaintiff's burden. *Van Omen*, 357 Ga. App. at 11 (2).

Here, it is undisputed that the statute of limitation ran on November 7, 2019, that Davis filed a pleading asserting a service defense on the same date, and that Fluellen did not serve Davis until April 10, 2020. So the only question is whether Fluellen acted with the "greatest possible diligence" from November 7, 2019, to April 10, 2020, to perfect service. *Van Omen*, 357 Ga. App. at 14 (2).

The trial court did not abuse its discretion in concluding that Fluellen did not act with the requisite diligence. Fluellen does not have a good explanation for why she did not attempt to serve Davis at 110 Brookside Court until April 10, 2020. According to Fluellen's research, four different addresses might have been associated with Davis: 1201 Barnes Mill Road, 2400 Barrett Creek Boulevard Apt. 907, 2400

6

Barrett Creek Boulevard Apt. 1227, and 110 Brookside Court. 110 Brookside was the only address where service was not attempted earlier. And that omission is all the more striking when compared with Fluellen's diligence in attempting service at *other* potential addresses. When Fluellen learned that Davis might be at Barrett Creek Boulevard Apt. 907, she attempted service at that address three times during the next month. When she learned that Davis might be at the other Barrett Creek apartment, she made five attempts in two months. But when Gold Investigations reported that they were "able to verify an exact location" for Davis at 110 Brookside Court, Davis took no action. And when the statute of limitations expired and Davis asserted a service defense—triggering the need for Fluellen to act with the "greatest possible diligence" to perfect service, *Van Omen*, 357 Ga. App. at 14 (2)—Fluellen waited another five months before attempting service at 110 Brookside, the one address that had not been tried.

We are not persuaded by Fluellen's argument that she did not attempt service at 110 Brookside because she was "mistakenly but convincingly informed that this address was incorrect" and she "did not want to waste further time and resources attempting service on a defunct address, especially since Georgia courts have penalized such redundant attempts." Fluellen is referring to the two updated reports

7

from Gold Investigations, the first stating that Davis "may" have moved to 2400 Barrett Court, Apt. 1227, and the second that Davis could not be connected to a verified address anywhere in the country. But the first update came six days after Gold's original report; Fluellen does not explain why she made no service attempt at 110 Brookside during the time when she was told that address was Davis's "verif[ied] . . . exact location." And after the update, Fluellen was told only that Davis "may" have moved to 2400 Barrett Court. Although it was also still possible that Davis was at 110 Brookside, Fluellen then made five service attempts at 2400 Barrett Court but none at 110 Brookside. Even after the second update, when Gold reported no verifiable address for Davis, the fact remained that the only address that had *ever* been identified—110 Brookside—had never been tried. The trial court reasonably concluded that such an effort did not amount to the "greatest possible diligence."

Fluellen tries to justify the failure to try service at 110 Brookside by citing *Wade v. Whalen* as an example of courts "penaliz[ing]" plaintiffs for making attempts at service that were known to be fruitless. 232 Ga. App. 765 (504 SE2d 456) (1998), overruled in part on other grounds by *Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314 (765 SE2d 413) (2014). But the facts here are different from *Wade*'s. There, we concluded that the plaintiff failed to exercise the greatest possible diligence, and we

8

observed that one of his many errors was causing delay in service by providing a sheriff with an address known to be outdated even though the post office had the current address. Id. at 767–68 (1). Here, by contrast, Fluellen was told only that 110 Brookside "may" be outdated, and there was no clearly correct alternate address that Fluellen should have used instead of 110 Brookside. So, unlike in *Wade*, checking 110 Brookside would have been prudent, not dilatory.

In short, under the facts presented to the trial court, it appropriately exercised its discretion in concluding that Fluellen failed to exercise the greatest possible diligence in perfecting service. See *UHS of Peachford v. Brady*, ___ Ga. App. ___ (864 SE2d 129) (2021) (plaintiff did not exercise greatest possible diligence when defendant's "identity and address for service were no mystery to [the plaintiff]"); *Lipscomb*, 335 Ga. App. at 881 (plaintiff did not exercise greatest possible diligence when he made only one attempt to serve the defendant after the defendant asserted a service defense). We therefore affirm the trial court's dismissal of the action. See *Van Omen*, 357 Ga. App. at 16 (3).

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*